UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

NEW HOPE FAMILY SERVICES, INC.,

*Plaintiff,*

-against-                                                18-CV-1419

SHEILA J. POOLE,                                         MAD/TWD

*Defendant.*

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO FRCP 12(B)(6)**


LETITIA JAMES
Attorney General of the State of New York
Attorney for Defendant Sheila J. Poole
The Capitol
Albany, New York  12224

Adrienne J. Kerwin
Assistant Attorney General, of Counsel
Bar Roll No. 105154
Telephone:  (518) 776-2608
Fax:  (518) 915-7738 (Not for service of papers)                Date: January 14, 2019

**Table of Contents**

TABLE OF AUTHORITIES. ............ …………………………………………………………………ii

PRELIMINARY STATEMENT ...................................................................................................... 1

PROCESSING OF ADOPTIVE PARENT APPLICATIONS…….………………………………3

MATCHING OF CHILDREN AND ADOPTIVE PARENTS………………………………...4

STATEMENT OF FACTS…………………………………………………………………….4

ARGUMENT…………………………………………………………………………………..6

    POINT I…………………………………………………………………………………...7

        THE COMPLAINT FAILS TO STATE A FREE EXERCISE CLAIM………….7

    POINT II………………………………………………………………………………….9

        THE COMPLAINT FAILS TO ALLEGE A FREE
        SPEECH OR EXPRESSIVE ASSOCIATION CLAIM…………………………..9

    POINT III………………………………………………………………………………...11

        THE COMPLAINT FAILS TO ALLEGE
        AN EQUAL PROTECTION CLAIM……………………………………….......11

    POINT IV………………………………………………………………………………...14

        THE COMPLAINT FAILS TO ALLEGE AN
        UNCONSTITUTIONAL CONDITIONS CLAIM………………………………14

CONCLUSION……………………………………………………………………………..15

**Table of Authorities**

**Cases**

Alliance for Open Soc'y Int'l v. United States Agency for Int'l Dev.,
    2018 U.S. App. LEXIS 35833 (2d Cir. Dec. 20, 2018)..............................................14

Alliance for Open Soc'y Int'l v. United States Agency for Int'l Dev.,
    430 F.Supp. 222, 253 (S.D.N.Y. 2006)............................................................14

Analytical Diagnostic Labs, Inc. v. Kusel, 626 F.3d 135 (2d Cir. 2010).......................11, 13

Ashcroft v. Iqbal, 556 U.S. 662 (2009)...................................................................6

Bell Atl. Corp. v. Twombly, 50 U.S. 544, 570 (2007)..................................................6

Bd. Of County Commissioners v. Umbehr, 518 U.S. 668 (1996).....................................14

Bloomingburg Jewish Educ. Ctr. v. Village of Bloomingburg,
    111 F.Supp.3d 459 (S.D.N.Y. 2015)................................................................7

CBF Industria DeGusa S/A v. AMCI Holdings, Inc., 2018 U.S. Dist LEXIS 100781
    (S.D.N.Y.  June 15, 2018)...........................................................................6

City of Cleburne v. Cleburne Living Center, 473 U.S. 432 (1985)...................................11

Church of Lukumi Babalu Aye,  Inc. v. Hialeah, 508 U.S. 520 (1993)............................7, 8

Concord Assocs., L.P. v. Entm't Props. Trust, 817 F.3d 46 (2d Cir. 2016)...........................6

Congregation of Rabbinical College of Tartikov, Inc. v. Vill. Of Pomona,
    915 F.Supp.2d 574 (S.D.N.Y. 2013)...............................................................7

Congregation Rabbinical College of Tartikov, Inc. v. Vill. of Pomona,
    138 F.Supp.3d 352 (S.D.N.Y. 2015)..............................................................10

DiFolco v. MSNBC LLC, 622 F.3d 104 (2d Cir. 2010).................................................6

EklecCo NewCo LLC v. Town of Clarkstown, 2018 U.S. Dist. LEXIS 101591
    (S.D.N.Y. June 18, 2018)..........................................................................14

Employment Div., Dept. of Human Resources of Ore. v. Smith,
    494 U.S. 872 (1990).................................................................................7

Fulton v. City of Philadelphia, 320 F.Supp.3d 661 (E.D.PA 2018).........................10, 11, 15

In re Adoption of Carolyn B., 6 A.D.3d 67 (4th Dept 2004)........................................8, 9

In re Jacob, 86 N.Y.2d 651, 663 (1995)................................................................1, 8, 10

Joglo Realties, Inc. v. Seggos, 229 F.Supp.3d 146 (E.D.N.Y. 2017).............................12, 13

LeClair v. Saunders, 627 F.2d 606 (2d Cir. 1980).......................................................12

Leebart v. Harrington, 332 F.3d 134 (2d Cir. 2003)......................................................8

Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n,
        __ U.S. __, 138 S.Ct. 1719 (2018)................................................................8

Matson v. Bd. of Educ., 631 F.3d 326 (2d Cir. 2011)....................................................6

Morgan v. Cnty. of Nassau, 2017 U.S. Dist. LEXIS 22992 (E.D.N.Y. Feb. 17, 2017)..............9

New York State Club Assoc. v. City of New York, 487 US 1 (1988)................................11

Ruston v. Town Bd. For the Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010)................12

Sugarman v. Vill. of Chester, 192 F.Supp.2d 282, 292 (S.D.N.Y. 2002)...........................10

Tigner v. State of Texas, 310 U.S. 141 (1940)............................................................11

Time Warner Cable, Inc. v. FCC, 729 F.3d 137 (2d Cir. 2013).....................................10

United States v. O'Brien, 391 U.S. 367 (1968).........................................................10

Universal City Studios v. Corley, 273 F.3d 429 (2d Cir. 2001)......................................9

Vann v. Sudranski, 2017 U.S. Dist. LEXIS 209439 (S.D.N.Y. Dec. 20, 2017)....................12

Village of Willowbrook v. Olech, 528 U.S. 562 (2000)...............................................11

Ward v. Rock Against Racism, 491 U.S. 781 (1989)..................................................10

WTC Families for a Proper Burial, Inc. v. City of New York, 567 F.Supp.2d 529
        (S.D.N.Y. 2008).................................................................................7, 8

## Statutes

FRCP 12(b)(6)...........................................................................................2, 6, 15

N.Y. Dom. Rel. Law §109(4).............................................................................4

N.Y. Dom. Rel. Law §110.................................................................................1

N.Y. Not-For-Profit Corp. Law §404(b)(1)...............................................................5

N.Y. Soc. Serv. Law §371(10)(a)..............................................................4, 5, 13, 14

N.Y. Soc. Serv. Law §373(7)..............................................................................4

N.Y. Soc. Serv. Law §374(2)..............................................................................4

N.Y. Soc. Serv. Law §460-a................................................................................5

**Regulations**

18 N.Y.C.R.R. §421.3(d)..........................................................................passim

18 N.Y.C.R.R. §421.11(a)-(f)............................................................................3

18 N.Y.C.R.R. §421.13.....................................................................................3

18 N.Y.C.R.R. §421.15...................................................................................3, 4

18 N.Y.C.R.R. §421.16.....................................................................................3

18 N.Y.C.R.R. §424.3(a)...................................................................................4

18 N.Y.C.R.R. §421.18.....................................................................................4

**Other Sources**

2010 S.B. 1523, Ch. 509....................................................................................1

N.Y.S. Register, Nov. 6, 2013........................................................................9, 10

OCFS Informational Letter 11-OCFS-INF-01 (Jan. 11, 2011)............................................1

OCFS Informational Letter 11-OCFS-INF-05 (July 11, 2011)..........................................1, 2

U.S. Const., amend. I.......................................................................................9

U.S. Const., amend. XIV..................................................................................11

## PRELIMINARY STATEMENT

The New York State Court of Appeals has long held that "neither marital status nor sexual orientation may alone be determinative in an adoption proceeding." In re Jacob, 86 N.Y.2d 651, 663, 667 (1995). In September 2010, New York State amended its Domestic Relations Law to codify the right to adopt by unmarried adult couples and married adult couples regardless of sexual orientation or gender identity. 2010 S.B. 1523, Ch. 509. N.Y. Dom. Rel. Law §110. Thereafter, in January 2011, the New York State Office of Children Family Services ("OCFS") informed, *inter alia*, authorized adoption agencies in New York that the amendment brought the Domestic Relations Law into compliance with existing case law, and was "intended to support fairness and equal treatment of families that are ready, willing and able to provide a child with a loving home." OCFS Informational Letter 11-OCFS-INF-01 (Jan. 11, 2011).

In an effort to clarify existing regulations in light of the 2010 amendment, OCFS provided further guidance to authorized adoption agencies. A July 2011 OCFS Information Letter advised that

> [i]t is important to recognize that all types of families are potential resources for children awaiting adoption and should be considered as potential adoptive parents. Maturity, self-sufficiency, ability to parent, ability to meet the child's needs, and availability of support systems are the critical assessments in identifying adoptive applicants' appropriateness for specific children.

OCFS Informational Letter 11-OCFS-INF-05 (July 11, 2011). Toward this end, agencies were advised that, *inter alia*, "discrimination based on sexual orientation in the adoption study assessment process" is prohibited. Id. OCFS further stated that

> OCFS cannot contemplate any case where the issue of sexual orientation would be a legitimate basis, whether in whole or in part, to deny the application of a person to be an adoptive parent. The capacity of the prospective adoptive parents to meet the needs of children freed for adoption should be the primary consideration when making approval or rejection decisions of an adoptive applicant.

1

Id. The Informational Letter also reminded authorized agencies that applicants for adoption may only be disapproved if (1) the applicant "is physically incapable for caring for an adopted child;" (2) the applicant "is emotionally incapable of caring for an adopted child;" or (3) the applicant's approval "would not be in the interests of the children awaiting adoption." Id.

In November 2013, OCFS promulgated 18 N.Y.C.R.R. §421.3(d) (hereafter "§421.3(d)"), which, in accordance with existing law, prohibits "discrimination and harassment against applicants for adoption services on the basis of race, creed, color, national origin, age, sex, sexual orientation, gender identity or expression, marital status, religion, or disability" and requires that agencies authorized by New York State to provide adoption services "shall take reasonable steps to prevent such discrimination or harassment by staff and volunteers, promptly investigate incidents of discrimination and harassment, and take reasonable and appropriate corrective or disciplinary action when such incidents occur." 18 N.Y.C.R.R. §421.3(d).

It is this regulation that plaintiff challenges in the instant proceeding. However, contrary to the position of plaintiff, New Hope Family Services, Inc. ("New Hope"), 18 N.Y.C.R.R. §421.3(d) does not create a new obligation for authorized adoption agencies. Such agencies were not permitted to deny the applications of otherwise qualified prospective adoptive parents based on an applicant's marital status or sexual orientation well before the promulgation of §421.3(d).

This memorandum of law is submitted on behalf of defendant, OCFS Acting Commissioner Sheila Poole, in support of her motion to dismiss the complaint pursuant to FRCP 12(b)(6).

## PROCESSING OF ADOPTIVE PARENT APPLICATIONS

Agencies authorized to provide adoption services in New York must comply with all relevant statutory, regulatory and case law.  Initially, agencies must receive and respond to inquiries from, conduct orientation sessions for, and offer OCFS-approved applications to prospective adoptive parents.  18 N.Y.C.R.R. §§421.11(a)-(f).  After an adoption application is received, an adoption study must be completed, id. at §421.13, pursuant to the procedure set forth in 18 N.Y.C.R.R. §421.15.   An adoption study must explore the following characteristics of prospective adoptive parents:

> (1) capacity to give and receive affection;
>
> (2) ability to provide for a child's physical and emotional needs;
>
> (3) ability to accept the intrinsic worth of a child, to respect and share his past, to understand the meaning of separation he has experienced, and to have realistic expectations and goals;
>
> (4) flexibility and ability to change;
>
> (5) ability to cope with problems, stress and frustration;
>
> (6) feelings about parenting an adopted child and the ability to make a commitment to a child placed in the home; and
>
> (7) ability to use community resources to strengthen and enrich family functioning.

Id. at §421.16.  An application may only be rejected if (1) an applicant does not cooperate with the adoption study; (2) an applicant is "physically incapable of caring for an adoptive child;" (3) an applicant is "emotionally incapable of caring for an adopted child;" or (4) an applicant's approval "would not be in the best interests of children awaiting adoptions."[1]  Id. at §421.15(g).

---

[1] Additionally, an applicant must be at least eighteen years old.  18 N.Y.C.R.R. §421.16(b).

Once an application is approved, the agency must add the applicant to the adoptive parent registry. Id. at §§421.15(i); 424.3(a).

### MATCHING OF CHILDREN AND ADOPTIVE PARENTS

Whether the adoption of a particular child by a particular prospective adoptive parent should be approved must be made on the "basis of the best interests of the child." 18 N.Y.C.R.R. §421.18(d). When making placement decisions, the agency should consider (1) the ages of the child and prospective parent(s); (2) the "physical and emotional needs of the child in relation to the characteristics, capacities, strengths and weaknesses of the adoptive parent(s)"; (3) the "cultural, ethnic or racial background of the child and the capacity of the adoptive parent to meet the needs of the child with such a background;" and (4) the ability of a child to be placed in a home with siblings. Id. Additionally, agencies must

> [m]ake an effort to place each child in a home as similar to and compatible with his or her religious background as possible with particular recognition that section 373(3) of the Social Services Law requires a court, when practicable, to give custody through adoption only to persons of the same religious faith as that of the child.

Id. at §421.18(c). Further, the Social Services Law provides that "so far as consistent with the best interests of the child, and where practicable," the religious wishes of the birthparents should be honored. N.Y. Soc. Serv. Law §373(7).

### STATEMENT OF FACTS

An entity must qualify as an "authorized agency" under the law before it may provide adoption services. N.Y. Soc. Serv. Law §371(10)(a); see also N.Y. Soc. Serv. Law §374(2). New Hope is an "authorized agency" with the authority to "place out or to board out children…," N.Y. Soc. Serv. Law §371(10)(a); see also N.Y. Soc. Serv. Law §374(2), and "receive children for purposes of adoption." N.Y. Dom. Rel. Law §109(4). See Dkt. No. 1-4 at p. 2. As an "authorized agency", New Hope must be "incorporated or organized under the laws of this state

4

with corporate power or empowered by law to care for, to place out or to board out children . . .

*and* submit and consent to the approval, visitation, inspection and supervision of [OCFS]

[emphasis added]." N.Y. Soc. Serv. Law §371(10)(a).  Moreover, OCFS must approve an

agency's certificate of incorporation. N.Y. Soc. Serv. Law §460-a.

New Hope is incorporated under New York Not-For-Profit Corporation Law for myriad

purposes, including placing out children in New York for adoption. N.Y. Not-For-Profit Corp.

Law §404(b)(1).  Under prior applicable law, New Hope was granted perpetual *corporate*

*authority*, meaning that it exists as a corporate structure in perpetuity, but not that it is approved

by OCFS to provide adoption services as an "authorized agency" in perpetuity. N.Y. Soc. Serv.

Law §371(10). In fact, New Hope does not have "perpetual authorization" to provide adoption

services. Nor may New Hope provide adoption services without the approval of OCFS. N.Y.

Soc. Serv. Law §371(10)(a).

The complaint alleges that New Hope operates several programs including a pregnancy

resource center, a temporary foster placement program, and adoptions services. Dkt. No. 1 at

¶50.  As an adoption provider, New Hope provides services to birth mothers seeking adoption

placements for their infants, Dkt. No. 1. at ¶¶71-102, and single individuals and married

opposite-sex couples seeking to adopt. Id. at ¶¶103-134.

In 2018, OCFS conducted a review of New Hope's programs.  During that review, OCFS

discovered that New Hope's policies prohibit the placement of children for adoption with

unmarried couples or same sex couples. Dkt. Nos. 1 at ¶188.  OCFS thereafter informed New

Hope that such policies are in violation of 18 N.Y.C.R.R. §421.3(d) and, therefore, New Hope

would have to provide adoption services to otherwise qualified unmarried and same sex couples

or cease the operation of its adoption program. Dkt. No. 1-7. New Hope refuses to comply with §421.3(d). Dkt. No. 1 at ¶191.

## ARGUMENT

On a motion to dismiss pursuant to FRCP 12(b)(6), the court must "accept[] all factual allegations in the complaint as true and draw[] all reasonable inferences in the plaintiff's favor." Concord Assocs., L.P. v. Entm't Props. Trust, 817 F.3d 46, 52 (2d Cir. 2016). However, the court is not required to assume that legal conclusions within the complaint are true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "In considering a motion to dismiss, a 'district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.'" CBF Industria DeGusa S/A v. AMCI Holdings, Inc., 2018 U.S. Dist LEXIS 100781, *16 (S.D.N.Y. June 15, 2018) (quoting DiFolco v. MSNBC LLC, 622 F.3d 104, 111 (2d Cir. 2010)).

To withstand a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 50 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Matson v. Bd. of Educ., 631 F.3d 326, 329 (2d Cir. 2011).

Based on the facts alleged by the plaintiff, the complaint fails to state a cause of action. First, the complaint fails to allege any facts to support a finding that §421.3(d) was promulgated for the purpose of discriminating against religious beliefs, and therefore it fails to plead a cognizable free exercise claim. Second, the complaint fails to allege that §421.3(d) is not content neutral or that it is unnecessary to fulfill the State's interests in preventing discrimination and expanding the number of prospective qualified families to adopt children in New York, and

6

therefore fails to state a freedom of speech or expressive association claim. Third, the complaint fails to allege that the plaintiff is being treated differently from other similarly situated authorized agencies, and therefore fails to allege an equal protection claim. Finally, since the complaint fails to allege the violation of any of plaintiff's constitutional rights, the complaint fails to allege that the defendant is conditioning plaintiff's authorization to provide adoption services on the forfeiture of a constitutional right.

POINT I

THE COMPLAINT FAILS TO STATE A FREE EXERCISE CLAIM

To "state a free exercise claim, a plaintiff generally must establish that 'the object of [the challenged] law is to infringe upon or restrict practices because of their religious motivation,' or that the law's 'purpose...is the suppression of religion or religious conduct.'" Congregation of Rabbinical College of Tartikov, Inc. v. Vill. Of Pomona, 915 F.Supp.2d 574, 619 (S.D.N.Y. 2013) (quoting Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 533 (1993)). The right of the free exercise of religion does not relieve an individual or entity of the obligation to comply with a "valid and neutral law of general applicability." Employment Div., Dept. of Human Resources of Ore. v. Smith, 494 U.S. 872 (1990). As a result, where an alleged prohibition on the exercise of religion "is not the object ... but merely the incidental effect of a generally applicable and otherwise valid provision, the First Amendment has not been offended." Id. at 878. See also Bloomingburg Jewish Educ. Ctr. v. Village of Bloomingburg, 111 F.Supp.3d 459, 484 (S.D.N.Y. 2015) (stating that a "law or regulation that is neutral and of general applicability is constitutional even if it has an incidental effect on religion"). Therefore, a law that only incidentally imposes a burden on the exercise of religion need only be supported by a rational basis. WTC Families for

7

a Proper Burial, Inc. v. City of New York, 567 F.Supp.2d 529, 539-540 (S.D.N.Y. 2008) (quoting Leebart v. Harrington, 332 F.3d 134, 143 (2d Cir. 2003)).

Religious beliefs are not targeted by 18 N.Y.C.R.R. §421.3(d), and it is plainly not the "object" of the regulation to interfere with plaintiff's, or anyone's, exercise of religion. On its face, §421.3(d) is generally applicable:

> [a]uthorized agencies providing adoption services shall…prohibit discrimination and harassment against applicants for adoption services on the basis of race, creed, color, national origin, age, sex, sexual orientation, gender identity or expression, marital status, religion, or disability…

18 N.Y.C.R.R. §421.3(d). The regulation applies to all authorized agencies, regardless of any religious affiliation.

Additionally, 421.3(d) is neutral. The neutrality of a law is determined by the consideration of relevant factors, including: "the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in questions, and the legislative or administrative history, including contemporaneous statements made by members of the decisionmaking body." Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 540 (1993). See also Masterpiece Cakeshop, Ltd. v. Colo. Civil rights Comm'n, __ U.S. __, 138 S.Ct. 1719, 1731 (2018) (applying the neutrality factors).

The evolution of adoption law in New York has been discussed by the courts, which have repeatedly held that the goal of the adoption laws is to further "New York's 'strong policy of assuring that as many children as possible are adopted into suitable family situations,'" In re Jacob, 86 N.Y.2d at 662, and approve adoptions that are in "the child's best interests." Id. at 658. To that end, the expansion of individuals authorized to adopt children in New York State to include unmarried and same sex couples has been identified by the Court of Appeals as in furtherance of the intention of this State's adoption laws. Id. at 660-664. See also In re Adoption of Carolyn B.,

8

6 A.D.3d 67, 69-70 (4th Dept 2004) (stating that adoption by unmarried and same sex couples furthers the state's interests in finding families for as many children as possible).

The object of §421.3(d) furthers that state interest, since the object of the relevant language of the regulation is to "[p]rohibit[] discrimination on the basis of sexual orientation, gender identity or expression in essential social services." N.Y.S. Register, Nov. 6, 2013, p. 3. The rulemaking documents and subsequent OCFS Information Letters, clearly establish this intent of §421.3(d), and no discovery is required. Therefore, when read in connection with the explicit intended purpose of the regulation and the established law relating to adoption, the allegations in the complaint that New Hope's religious beliefs are incidentally affected by the regulation are insufficient to state a First Amendment free exercise claim.[2] Accordingly, New Hope's first cause of action should be dismissed.

POINT II

THE COMPLAINT FAILS TO ALLEGE A FREE<br>SPEECH OR EXPRESSIVE ASSOCIATION CLAIM[3]

The First Amendment prohibits the promulgation of a law "abridging the freedom of speech," U.S. Const. amend. I, and the applicable free speech analysis differs depending on whether the law is "content-based" or "content-neutral." Universal City Studios v. Corley, 273 F.3d 429, 450-451 (2d Cir. 2001). "The principal inquiry in determining content neutrality…is whether the government has adopted a regulation of speech because of disagreement with the

---

[2] It is also noteworthy that §421.3(d) has no effect on the various statutes and regulations requiring the consideration of birth parents, children and prospective adoptive parents in the matching process. Therefore, nothing about §421.3(d) requires New Hope, or any authorized agency, to place a child with a family without considering the relevant religious beliefs of the parties.

[3] New Hope's expressive association claim in its second cause of action is duplicative of its free speech claim, Morgan v. Cnty. of Nassau, 2017 U.S. Dist. LEXIS 22992, *46 (E.D.N.Y. Feb. 17, 2017). Therefore, both claims fail for the same reasons discussed herein. Id.

9

message it conveys…A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989). "In other words, '[a law] is content-based when the content of the speech determines whether the [law] applies." Congregation Rabbinical College of Tartikov, Inc. v. Vill. of Pomona, 138 F.Supp.3d 352, 426 (S.D.N.Y. 2015) (quoting Sugarman v. Vill. of Chester, 192 F.Supp.2d 282, 292 (S.D.N.Y. 2002)).

As discussed above, §421.3(d) applies to all authorized agencies and, therefore, its applicability is not based on the content of an agency's speech. Congregation Rabbinical College of Tartikov, 138 F.Supp.3d at 426. Additionally, the regulation was promulgated to ensure that "discrimination on the basis of sexual orientation, gender identity or expression in essential social services," does not occur, N.Y.S. Register, Nov. 6, 2013, p. 3, when determining if an adoption is in a child's best interests.[4] Therefore, it is content-neutral.

A content-neutral law does not violate the free speech guarantee of the First Amendment if it "(1) 'advances important government interests unrelated to the suppression of speech' and (2) 'does not burden substantially more speech than necessary to further those interests.'" Time Warner Cable, Inc. v. FCC, 729 F.3d 137, 160 (2d Cir. 2013) (stating the factors set forth in United States v. O'Brien, 391 U.S. 367, 377 (1968)).

The state interest of expanding the number of people who may adopt children has been judicially determined to be an important government interest. In re Jacob, 86 N.Y.2d at 658, 661.

---

4 Just like the Philadelphia Department of Human Services in Fulton v. City of Philadelphia, OCFS "did not seek to create a forum for private speech nor did [it] seek to promote speech at all" when it authorized a religious organization to provide family services. 320 F.Supp.3d 661, 695-696 (E.D.PA. 2018). Instead, it authorized New Hope to provide services to New York State residents, including the completion of adoption studies. Id. (authorizing plaintiff to provide certification services and home visits for prospective foster parents).

In other words, permanency is vital to the welfare of a child, and is highly valued in determining a child's best interests. Toward that end, 18 N.Y.C.R.R. §421.3(d) goes no further than ensuring that all people entitled to adopt in New York are considered and afforded an equal opportunity as prospective adoptive parents by state authorized adoption agencies. It neither compels, nor prohibits, New Hope from (1) expressing its beliefs, religious or otherwise, or (2) associating with others for the purpose of expressing such beliefs. Therefore, plaintiff's second cause of action should be dismissed.

POINT III

THE COMPLAINT FAILS TO ALLEGE
AN EQUAL PROTECTION CLAIM

The equal protection clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV. Its command is essentially a direction that all persons similarly situated should be treated alike. City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). An equal protection claim cannot be maintained unless a plaintiff shows that it is not being treated the same as similarly situated individuals. New York State Club Assoc. v. City of New York, 487 US 1, 17-18 (1988); Tigner v. State of Texas, 310 U.S. 141, 147 (1940) (the Equal Protection Clause "does not require things which are different in fact or opinion to be treated in law as though they were the same.").

It is difficult to decipher if New Hope is attempting to allege a "class of one" or a "selective enforcement" equal protection claim. To allege a class of one equal protection claim, a plaintiff must allege that it has been "'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Analytical Diagnostic Labs, Inc. v. Kusel, 626 F.3d 135, 140 (2d Cir. 2010) (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). A plaintiff "must show an extremely high degree of similarity between [itself] and

11

[its comparators]" to state such a claim. <u>Ruston v. Town Bd. For the Town of Skaneateles</u>, 610 F.3d 55, 59 (2d Cir. 2010).

A selective enforcement claim requires a plaintiff to allege that it was treated differently than others similarly situated "'based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure…'" <u>Joglo Realties, Inc. v. Seggos</u>, 229 F.Supp.3d 146, 152-153 (E.D.N.Y. 2017) (quoting <u>LeClair v. Saunders</u>, 627 F.2d 606, 609-610 (2d Cir. 1980)). It is unsettled in the Second Circuit about the level of similarity that must be alleged to state a selective enforcement claim, with some courts applying the same standard as in a class of one claim, and others permitting a slightly more lenient standard requiring that the comparators be similar in "all material respects." <u>Joglo Realties, Inc.</u>, 229 F.Supp.3d at 153. Notwithstanding, the complaint fails to allege a comparator under either standard.

Based on the allegations in the complaint, themselves, §421.3(d) applies to all agencies authorized by OCFS to provide adoption services and, therefore, New Hope has failed to allege a sufficiently similar comparator as required to state an equal protection claim. <u>Vann v. Sudranski</u>, 2017 U.S. Dist. LEXIS 209439, *13 (S.D.N.Y. Dec. 20, 2017). New Hope's allegations of disparate treatment state that "Section 421.3(d) treats New Hope's speech and exercise of its religious views differently from persons similarly situated to it because" (1) "faith-based or secular adoption providers who hold different views on marriage, the family, and human sexuality are permitting to continue operating" and (2) "parents adopting children are permitted to take into account protected classes and characteristics but in facilitating the adoption New Hope is not." Dkt. No. 1 at ¶¶282, 283. Neither of these allegations is sufficient to state an equal protection claim.

12

To allege a sufficient comparator, a plaintiff must allege, at a minimum, that it is similarly situated to such a comparator in **all material respects**. Here, New Hope fails to allege that any other "faith based or secular adoption provider" violated §421.3(d) and was nonetheless permitted to continue operating its adoption program. It has not alleged that other authorized agencies are being permitted to summarily exclude individuals authorized to adopt from the pool of prospective adoptive parents. Additionally, it has not alleged that any other authorized agencies are refusing to apply the relevant statutory and regulatory factors when determining whether approval of a family's application to adopt would be in children's best interests. Instead, it alleges only that the general applicability of §421.3(d) incidentally touches on its beliefs. Such allegations are insufficient to allege that New Hope is (1) intentionally being treated differently from other authorized adoption agencies without a rational basis, Analytical Diagnostic Labs, Inc., 626 F.3d at 140, or (2) intentionally being treated differently because of a protected consideration. Joglo Realties, Inc., 229 F.Supp.3d at 152-153.

New Hope's attempt to allege adoptive parents as a comparator is even more specious. Prospective adoptive parents are not similarly situated to New Hope under the law. New Hope is subject to §421.3(d) because it is an adoption agency authorized by the state to provide adoption services. N.Y. Soc. Serv. Law §371(10)(a). By contrast, prospective adoptive parents are simply members of the public. The state's determination regarding which criteria authorized adoption agencies may utilize when evaluating prospective adoptive families is far different than a family's determination of whether it can appropriately nurture a child. Therefore, prospective adoptive parents are not similarly situated to New Hope in all material respects.

As New Hope has failed to allege any sufficiently similar comparator, it has failed to state an equal protection claim. As a result, plaintiff's third cause of action should be dismissed.

POINT IV

## THE COMPLAINT FAILS TO ALLEGE AN
## UNCONSTITUTIONAL CONDITIONS CLAIM

Finally, the complaint fails to allege an unconstitutional conditions claim. Under the unconstitutional conditions doctrine, the government may not "condition the acceptance of a public benefit on the curtailment of a constitutional right." Alliance for Open Soc'y Int'l v. United States Agency for Int'l Dev., 430 F.Supp. 222, 253 (S.D.N.Y. 2006). The application of the doctrine "varies depending on the underlying substantive right at issue." EklecCo NewCo LLC v. Town of Clarkstown, 2018 U.S. Dist. LEXIS 101591, *20 (S.D.N.Y. June 18, 2018). In the First Amendment context, the unconstitutional conditions doctrine precludes the government from "'deny[ing] a benefit to a person on a basis that infringes his constitutionally protected…freedom of speech' even if he has no entitlement to that benefit." Bd. Of County Commissioners v. Umbehr, 518 U.S. 668, 674 (1996).

Plaintiff's fourth cause of action alleges that the defendant "has violated the unconstitutional conditions doctrine by conditioning New Hope's perpetual authorization to provide adoption services on its willingness to relinquish its First Amendment rights." Dkt. No. 1 at 295. This argument necessarily fails because, as discussed above, §421.3(d) does not violate any of New Hope's First Amendment rights. Additionally, as discussed above, this allegation conflates New Hope's perpetual authority as a corporate structure with its status as an "authorized agency" subject to the ongoing approval of OCFS. N.Y. Soc. Serv. Law §371(10)(a). Further, authorization by OCFS to provide adoption services is not a "public benefit" under the unconstitutional conditions doctrine. See e.g. Alliance for Open Soc'y Int'l v. United States Agency for Int'l Dev., 2018 U.S. App. LEXIS 35833, **42-43 (2d Cir. Dec. 20, 2018) (discussing public funding as the relevant benefit covered by the doctrine).

14

Therefore, since New Hope's authorization to provide adoption services is contingent on New Hope's compliance with relevant law, and not on its relinquishment of any First Amendment rights, plaintiff's fourth cause of action should be dismissed.

## CONCLUSION

This case does not require the resolution of any issues of fact, because the issues presented are purely legal ones. For the reasons discussed above, defendant's motion to dismiss the complaint pursuant to FRCP 12(b)(6) should be granted in its entirety.

Dated: Albany, New York
January 14, 2018

> LETITIA JAMES
> Attorney General of the State of New York
> Attorney for Defendant Sheila J. Poole
> The Capitol
> Albany, New York  12224
>
> By: s/ Adrienne J. Kerwin
> Adrienne J. Kerwin
> Assistant Attorney General, of Counsel
> Bar Roll No. 105154
> Telephone: (518) 776-2608
> Fax: (518) 915-7738 (Not for service of papers)
> Email: Adrienne.Kerwin@ag.ny.gov

TO:     David A. Cortman     dcortman@alliancedefendingfreedom.org

Erik W. Stanley     estanley@alliancedefendingfreedom.org,
shenning@alliancedefendingfreedom.org

Jeana Hallock     jhallock@adflegal.org

Jeremiah Galus     jgalus@adflegal.org

Jonathan A. Scruggs     jscruggs@alliancedefendingfreedom.org,
jpeterson@alliancedefendingfreedom.org

15

Robert E. Genant    bgenant@genantlaw.com, awoodford@genantlaw.com, dduger@genantlaw.com, ldimon@genantlaw.com

Roger Greenwood Brooks    rbrooks@adflegal.org