UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NEW HOPE FAMILY SERVICES, INC.,

       Plaintiff,

 vs.              5:18-CV-01419
                 (MAD/TWD)
SHEILA J. POOLE, *in her official capacity
as Acting Commissioner for the Office of
Children and Family Services for the State
of New York*,

       Defendant.
_____

APPEARANCES:         OF COUNSEL:

**ALLIANCE DEFENDING FREEDOM**  **DAVID A. CORTMAN, ESQ.**
**GEORGIA OFFICE**
1000 Hurricane Shoals Road, NE
Suite D1100
Lawrenceville, Georgia 30078
Attorneys for Plaintiff

**ALLIANCE DEFENDING FREEDOM**  **JONATHAN A. SCRUGGS, ESQ.**
**ARIZONA OFFICE**         **JACOB P. WARNER, ESQ.**
15100 N. 90th Street         **JEREMIAH GALUS, ESQ.**
Scottsdale, Arizona 85260      **MARK LIPPELMANN, ESQ.**
Attorneys for Plaintiff        **ROGER GREENWOOD BROOKS, ESQ.**

**OFFICE OF ROBERT E. GENANT**  **ROBERT E. GENANT, ESQ.**
3306 Main Street, Suite B
P.O. Box 480
Mexico, New York 13114
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**    **ADRIENNE J. KERWIN, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

          **MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

Plaintiff New Hope Family Services, Inc. ("New Hope") commenced this civil rights action on December 6, 2018, challenging the constitutionality of the New York Office of Children and Family Services' ("OCFS")[1] interpretation and application of 18 N.Y.C.R.R. § 421.3(d). *See* Dkt. No. 1. On December 12, 2018, New Hope filed a motion for a preliminary injunction seeking to prevent OCFS from revoking New Hope's perpetual authorization to place children for adoption during the pendency of this litigation. *See* Dkt. No. 15. On January 14, 2019, OCFS cross-moved to dismiss the complaint in its entirety. *See* Dkt. No. 34. The Court granted OCFS's cross motion to dismiss in its entirety and denied New Hope's motion for a preliminary injunction as moot. *See* Dkt. No. 38. New Hope timely appealed. *See* Dkt. No. 40. On July 21, 2020, the Second Circuit Court of Appeals issued an order reversing this Court's dismissal of New Hope's Free Exercise and Free Speech claims and remanded this case for consideration of the motion for a preliminary injunction. *See* Dkt. Nos. 44, 45. On October 5, 2020, the Court granted Plaintiff's motion for a preliminary injunction. *See* Dkt. No. 57.

Currently before the Court are New Hope's motion for summary judgment, *see* Dkt. No. 75, and OCFS' cross motion for summary judgment, *see* Dkt. No. 74.

## II. BACKGROUND[2]

"Adoption services in New York can only be provided by 'authorized agencies,' *i.e.*,

---

[1] Because Defendant Sheila J. Poole is sued only in her official capacity, the Court refers to Defendant by the agency she heads, OCFS.

[2] The Court notes that both parties' statements of material facts are replete with legal arguments, legal conclusions, and clearly contested facts. A limited recitation of the material facts relevant to this motion is set forth below; more thorough examinations of the adoption process, the history of the regulatory scheme, and the parties' various allegations can be found in prior decisions in this matter.

entities incorporated or organized under New York law with corporate or legal authority 'to care for, to place out or to board out children.'" *New Hope Fam. Servs., Inc. v. Poole*, 966 F.3d 145, 150 (2d Cir. 2020) (quoting N.Y. Soc. Serv. Law §§ 371(10)(a), 374(2)).  New Hope is one such authorized agency, having been granted perpetual corporate authority in 1967.  However, New Hope must still "submit and consent to the approval, visitation, inspection and supervision of [OCFS] as to any and all acts in relation to the welfare of children performed or to be performed under this title."  N.Y. Soc. Serv. Law § 371(10)(a).  As an authorized agency, New Hope may board children in foster homes or in prospective adoptive homes based on its assessment of the children's "best interests."  Dkt. No. 74-20 at ¶ 76.

Until 2010, New York statute prohibited adoption by any couple other than a heterosexual, married couple.  *See* N.Y. Dom. Rel. Law § 110 (2009).  However, in September 2010, New York State amended its Domestic Relations Law to codify the right to adopt by unmarried adult couples and married couples regardless of sexual orientation or gender identity.  *See* 2010 S.B. 1523, Ch. 509; N.Y. Dom. Rel. Law § 110.  Domestic Relations Law § 110 did not contain any mandate requiring adoption agencies to approve adoption by any persons.  See Dkt. No. 75-1 at 16.  New York law authorizes the Commissioner of OCFS to enforce laws and rules pertaining to adoption.  *See* N.Y. Soc. Serv. Law § 34(3)(e).

In January 2011, OCFS sent authorized adoption agencies in New York a letter stating that the amendment brought the Domestic Relations Law into compliance with existing case law and was "intended to support fairness and equal treatment of families that are ready, willing and able to provide a child with a loving home" and did "not change or alter the standards currently in place for the approval of an individual as an adoptive parent."  Dkt. No. 75-13 at 4.  This letter attached a copy of then-Governor David Paterson's signing statement accompanying his approval

of the bill, which read that, "since the statute is permissive, it would allow for such adoptions without compelling any agency to alter its present policies." *Id.* at 5. However, in July 2011, OCFS sent authorized adoption agencies in New York a second letter which stated that "discrimination based on sexual orientation in the adoption study assessment process" was prohibited and that "OCFS cannot contemplate any case where the issue of sexual orientation would be a legitimate basis, whether in whole or in part, to deny the application of a person to be an adoptive parent." Dkt. No. 75-14 at 5.

In November 2013, OCFS promulgated 18 N.Y.C.R.R. § 421.3(d), which prohibited "discrimination and harassment against applicants for adoption services on the basis of race, creed, color, national origin, age, sex, sexual orientation, gender identity or expression, marital status, religion, or disability." Section 421.3(d) also required that authorized agencies "shall take reasonable steps to prevent such discrimination or harassment by staff and volunteers, promptly investigate incidents of discrimination and harassment, and take reasonable and appropriate corrective or disciplinary action when such incidents occur."

When unmarried or same-sex applicants contact New Hope seeking adoption services, it is New Hope's practice to (1) inform them that it cannot provide them with adoption services because of its religious beliefs, and (2) offer to provide those applicants with referrals to other agencies. Dkt. No. 75-1 at 11. In 2018, OCFS conducted a comprehensive review of New Hope as part of its effort to review authorized agencies with perpetual authority. *See* Dkt. No. 74-20 at ¶ 81. In October 2018, an OCFS employee contacted New Hope to advise it that its referral policy was in violation of OCFS policy and Section 421.3(d), and to discuss how New Hope could come into compliance. *See id.* at ¶ 87. New Hope declined to change its referral policy. OCFS then sent New Hope a letter stating that New Hope's "policy pertaining to not placing

'children with those who are living together without the benefit of marriage' or 'same sex couples' violates Title 18 NYCRR § 421.3, and is discriminatory and impermissible." Dkt. No. 1-7 at 3. The letter instructed New Hope that "within 15 days of receipt of this letter," New Hope must state in writing whether it will or will not "revise the policy so as to comply with the above-cited regulation." *Id.* The letter informed New Hope that should it "fail to bring the policy into compliance with the regulation, OCFS will be unable to approve continuation of [New Hope's] current adoption program and [New Hope] will be required to submit a close-out plan for the adoption program." *Id.* New Hope thereafter commenced this action.

### III. DISCUSSION

**A.     Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986). In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson*, 477 U.S. at 255) (other citations omitted). Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute. *See Anderson*, 477 U.S. at 258.

The moving party bears the initial burden of establishing that there is no genuine issue of

material fact to be decided. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case. *See id.* at 325. Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial. *See* Fed. R. Civ. P. 56(e). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits ... to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant ... is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed R. Civ. P. 56(c)(4)).

**B.     Free Speech Claim**

   *1. Compelled Speech*

"'At the heart of the First Amendment' is the principle 'that each person should decide for himself or herself the ideas and beliefs deserving of expression, consideration, and adherence.'" *New Hope*, 966 F.3d at 170 (quoting *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 213 (2013)). "Consistent with this principle, freedom of speech means that the 'government may not prohibit the expression of an idea,' even one that society finds 'offensive or disagreeable.'" *Id.* (quoting *Texas v. Johnson*, 491 U.S. 397, 414 (1989)); *see also Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2354 (2020). "For much the same reason, [the] government also cannot tell people that there are things 'they must say.'" *New Hope*, 966 F.3d at

6

170 (quoting *Agency for Int'l Dev.*, 570 U.S. at 213); *accord Janus v. Am. Fed'n of State, Cty. & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2463 (2018) (stating that the First Amendment prevents the government from "[c]ompelling individuals to mouth support for views they find objectionable"). "Thus, when [the] government 'direct[ly] regulat[es] ... speech' by mandating that persons explicitly agree with government policy on a particular matter, it 'plainly violate[s] the First Amendment.'" *New Hope*, 966 F.3d at 170 (quoting *Agency for Int'l Dev.*, 570 U.S. at 213). Content-based regulations on speech "'are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests.'" *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2371 (2018) (quotation omitted)

### a. The Government Speech Doctrine

OCFS continues to press its argument that "the determinations made by New Hope in connection with the processing of adoption applications and placing children in adoptive families are government speech, which do not trigger First Amendment protections." Dkt. No. 74-21 at 30-31. The Supreme Court has held "that the mere fact that government authorizes, approves, or licenses certain conduct does not transform the speech engaged therein into government speech." *New Hope*, 966 F.3d at 171; *see also Matal v. Tam*, 137 S. Ct. 1744, 1758 (2017) ("If private speech could be passed off as government speech by simply affixing a government seal of approval, government could silence or muffle the expression of disfavored viewpoints"). The Second Circuit previously identified three circumstances where Supreme Court precedents have recognized government speech: "a federally created advertising program to promote the sale of beef" in *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550 (2005), "a local government's acceptance of a Ten Commandments monument for display in a city park" in *Pleasant Grove City v.*

*Summum*, 555 U.S. 460 (2009), and "a state's allowance of specialty license plates" in *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200 (2015).  *New Hope*, 966 F.3d at 173.

When it examined the government speech issue earlier in this litigation, the Second Circuit concluded that nothing in the pleadings suggested that there was expressive conduct or other speech engaged in by New Hope in the course of providing adoption services that constituted government speech.  *See id.* at 175.  The Circuit reasoned that (1) in "contrast to the monuments discussed in *Pleasant Grove* and the license plates at issue in *Walker*, adoption has not historically been treated by government as a means for it to communicate with the public on various matters"; (2) the public did not understand "New Hope's expressive activities, either in generally providing adoption services or, ultimately, in recommending a child's placement, to be the State's own message"; and (3) it could not conclude that "'from beginning to end' the messages conveyed by New Hope are so controlled by New York as to be the State's own."  *Id.* at 174-75.

OCFS now asserts that it has offered record evidence sufficient to change the Second Circuit's analysis and implicate the government speech doctrine.  *See* Dkt. No. 74-21 at 31-33.  Specifically, OCFS offers the declaration of Carol McCarthy, *see* Dkt. No. 74-4, as establishing that "[t]here is no difference in how the state governs government authorized agencies and voluntary authorized agencies in the field of adoption" and that the "laws, regulations[,] and policies that govern authorized [adoption] agencies ... do not distinguish between them."  Dkt. No. 74-21 at 31.  However, OCFS points to no authority holding that these factual allegations, even if true,[3] are relevant considerations in identifying government speech.  The Second Circuit

---

[3] The Court is not convinced that the McCarthy declaration actually establishes that there is "no difference" between how the state "governs" a public adoption agency versus a private one similar to New Hope.  It remains true that (1) New Hope has corporate authority in perpetuity,

8

has previously cautioned against extending the doctrine of government speech beyond its established precedents, *see New Hope*, 966 F.3d at 172-73, and the Court declines to do so here without clear supporting authority.

OCFS does not identify any other new evidence significant to the Second Circuit's prior analysis of this issue. Without new evidence, the Second Circuit's legal analysis on this issue during the motion to dismiss remains just as relevant on this motion for summary judgment. *See Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (holding that a prior decision in the same litigation "'should generally be adhered to ...' unless 'cogent and compelling reasons militate otherwise'") (quotation omitted).

Accordingly, the Court holds that none of New Hope's expressive conduct or other speech constitutes government speech.

### b. Does Section 421.3(d) Compel or Prohibit Speech?

OCFS also continues to argue that Section 421.3(d) does not compel or prohibit any speech. *See* Dkt. No. 74-21 at 29-31. The Second Circuit made several relevant rulings on this issue on the motion to dismiss. First, the Circuit rejected OCFS' argument that Section 421.3(d) regulates only New Hope's conduct, not speech, holding that (1) the pleadings had "demonstrate[d] more than conduct" because "New Hope has a plausible claim that by compelling it to place children with unmarried and same-sex couples, OCFS is necessarily compelling New Hope to engage in the speech required for that conduct—speech with which New Hope does not agree," *New Hope*, 966 F.3d at 177; and (2) in any event, "even conduct can claim the protections

---

and therefore does not need to seek corporate reauthorization from OCFS, (2) "no New York officials engage directly with private authorized agencies as they recruit, instruct, evaluate, and ultimately recommend adoptive parents to a child's birth parents and to the court," *New Hope*, 966 F.3d at 175; and (3) "OCFS officials [n]ever review, edit, or reject a private authorized agency's best-interests assessment before a child's placement in an adoptive family." *Id.*

of Free Speech where '[a]n intent to convey a particularized message [is] present, and ... the likelihood [is] great that the message would be understood by those who viewed' or learned of the conduct," *id.* at 176 (quoting *Texas v. Johnson*, 491 U.S. 397, 404 (1989)).  Second, the Circuit held that the complaint "admit[ted] a plausible inference that New Hope cannot both comply with [Section] 421.3(d), as required to retain its authorization to provide adoption services, and express its view that adoption by unmarried and same-sex couples is not in the best interests of a child." *New Hope*, 966 F.3d at 176.  After making these holdings, the Second Circuit noted that "discovery [was] warranted to determine the extent to which the required compliance will restrict or compel New Hope's speech." *Id.*

OCFS does not submit any new evidence to establish that compliance with Section 421.3(d) would not restrict or compel New Hope's speech.  Nor does OCFS identify any new evidence that establishes that no speech occurs when New Hope places children with couples. Instead, OCFS "continues to maintain that the regulation does not compel speech because the placement of a child with a prospective adoptive parent pursuant to rules prohibiting discrimination is conduct, not speech."  Dkt. No. 74-21 at 29.  OCFS alleges that the Supreme Court, in *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47 (2006), confirmed a "longstanding principle that prohibitions on discrimination regulate conduct, not speech, even if they may impact statements about access to goods or services." Dkt. No. 74-21 at 29-30.  However, this Court does not read *Rumsfeld* as establishing a general rule that prohibitions on discrimination regulate only conduct.

In *Rumsfeld*, the Supreme Court examined the "Solomon Amendment," 10 U.S.C. § 983, which "specifie[d] that if any part of an institution of higher education denies military recruiters access equal to that provided other recruiters, the entire institution would lose certain federal

10

funds." *Rumsfeld*, 547 U.S. at 51. The Court determined that the Solomon Amendment regulated conduct, not speech, because schools "remain[ed] free under the statute to express whatever views they may have on the military's congressionally mandated employment policy, all the while retaining eligibility for federal funds." *Id.* at 60. The regulation in this case is clearly distinguishable from the statute in *Rumsfeld*. As the Second Circuit noted, if New Hope were to express its view that adoption by unmarried and same-sex couples is not in the best interests of a child "it would likely face a lawsuit" under Section 421.3(d) "'the next day.'" *New Hope*, 966 F.3d at 176 (quoting J. App'x at 237). OCFS does not dispute that assertion. This stands in clear contrast to the schools in *Rumsfeld*, who "'could put signs on the bulletin board next to the door, ... could engage in speech, [and] could help organize student protests'" without jeopardizing access to federal funds. *Rumsfeld*, 547 U.S. at 60 (quotation omitted).[4]

Accordingly, the Court holds that Section 421.3(d) compels or prohibits speech, and may be justified only if OCFS proves that it is narrowly tailored to serve compelling state interests.

### 3. Strict Scrutiny

This Court previously concluded, in its October 5, 2020 Memorandum-Decision and Order, that OCFS had identified two compelling interests: avoiding discrimination on the basis of marital status or sexual orientation, and promoting the pool of potential adoptive families. *See New Hope Fam. Servs., Inc. v. Poole*, 493 F. Supp. 3d 44, 60, 63 (N.D.N.Y. 2020). New Hope argues that these interests are not "supported by record evidence," because (1) "'enforcing section

---

[4] OCFS briefly argues that Section 421.3 is "content-neutral" because it "applies to all authorized agencies and, therefore, its applicability is not based on the content of an agency's speech." Dkt. No. 74-21 at 28 (citing *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 426 (S.D.N.Y. 2015), *aff'd sub nom. Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, 945 F.3d 83 (2d Cir. 2019)). *Congregation Rabbinical*, however, provides no support for OCFS' argument, and OCFS does not otherwise explain why applying Section 421.3 to all agencies should automatically render it content neutral.

11

421.3(d) to close New Hope actually runs contrary to the state's interest in maximizing the number of families available for adoption'"; (2) "New Hope has never deprived any adult an opportunity to adopt"; and (3) the "extensive exceptions" to Section 421.3(d) undermine the "'contention that ... non-discrimination policies can brook no departures.'"  Dkt. No. 75-1 at 38 (quotations omitted).  These arguments, however, speak more to whether Section 421.3 is narrowly tailored; not to whether avoiding discrimination or increasing the number of children available to adoptive families are generally compelling interests.  Thus, in the absence of any evidence to the contrary, this Court continues to find that these interests are compelling.

Turning to whether Section 421.3(d) is narrowly tailored to advance the state's compelling interests, this Court has previously held that Section 421.3(d) is not narrowly tailored because (1) Section 421.3(d) fails to provide the accommodation for religious beliefs that was signaled in the amendment of Domestic Relations Law § 110; (2) enforcement of Section 421.3(d) to close New Hope actually runs contrary to the state's interest in maximizing the number of families available for adoption; and (3) New Hope's "recusal-and-referral" practice was a more narrowly tailored means of avoiding discrimination than the closure of New Hope's adoption operation.  *See New Hope*, 493 F. Supp. 3d at 60, 63.  OCFS challenges all three of those conclusions, but fails to point to any evidence to the contrary in the record.  In particular, OCFS has not submitted any actual evidence of (1) complaints from referred couples, (2) referred couples that were unable to adopt, (3) referred couples that suffered increased wait times or costs, or (4) lengthening waiting lists at agencies without New Hope's referral policy.  The McCarthy declaration does not provide any support for OCFS' position, inasmuch as Ms. McCarthy makes only conclusory assertions that the recusal-and-referral practice decreases the pool of children available to same sex and unmarried couples and increases waiting lists, without pointing to any supporting evidence.  *See*

Dkt. No. 74-4 at ¶¶ 47-53.

Accordingly, the Court holds that Section 421.3(d) is not narrowly tailored to advance the state's compelling interests.[5]

## C. Permanent Injunction

"The standard for a permanent injunction is comparable to that of a preliminary injunction, except that Plaintiffs must show actual success on the merits." *Nnebe v. Daus*, 510 F. Supp. 3d 179, 189 (S.D.N.Y. 2020), *aff'd*, 2022 WL 1220204 (2d Cir. Apr. 26, 2022) (citations omitted). Accordingly, to obtain a permanent injunction, a plaintiff must show

> (1) success on the merits; (2) an irreparable injury; (3) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (4) that considering the balance of hardships between plaintiffs and defendants, an equitable remedy is warranted; and (5) that the public interest would not be disserved by a permanent injunction.

*Cole-Hatchard v. Cnty. of Rockland*, No. CV 17-2573, 2021 WL 4199848, *2 (S.D.N.Y. Sept. 15, 2021) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006)).

New Hope has demonstrated that it is entitled to a permanent injunction prohibiting the State of New York from requiring New Hope to provide adoption services to unmarried or same-sex couples. First, New Hope has succeeded on the merits of its First Amendment claim against OCFS, as detailed above. Second, "[t]he loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also New York Progress and Protection PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir.

---

[5] Because the Court has found in New Hope's favor on its Free Speech claim, the Court need not reach the merits of New Hope's remaining causes of action, as the scope of the appropriate injunctive relief would not vary based on the merits of the remaining claims.

2013). Third, absent an injunction, the remedies available at law are inadequate to compensate for ongoing violations of New Hope's First Amendment rights. *See Cole-Hatchard*, 2021 WL 4199848, at *3 (citing *Ne. Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990)); *see also Picard v. Clark*, 475 F. Supp. 3d 198, 207 (S.D.N.Y. 2020), *vacated and remanded on other grounds*, 42 F.4th 89 (2d Cir. 2022). Fourth, the balance of the hardships is in New Hope's favor; it faces harm to its rights under the First Amendment and is subject to closure if the Court does not issue a permanent injunction. OCFS and the state, in contrast, do "'not have an interest in the enforcement of an unconstitutional law.'" *Walsh*, 733 F.3d at 488 (quoting *Am. Civil Liberties Union v. Ashcroft*, 322 F.3d 240, 247 (3d Cir. 2003)). Fifth, and finally, a permanent injunction will not disserve the public interest as "securing First Amendment rights is in the public interest." *Id.*

Accordingly, that portion of New Hope's motion for summary judgment seeking a permanent injunction enjoining OCFS from applying Section 421.3(d) to it is granted.[6]

### IV. CONCLUSION

After careful review of the record, the parties' arguments, and the applicable law—in particular the Second Circuit's prior decision in this matter—the Court hereby

**ORDERS** that OCFS' motion for summary judgment (Dkt. No. 74) is **DENIED**; and the

---

[6] The Court notes that it issues only an "as-applied" injunction, as New Hope requested in the complaint, *see* Dkt. No. 1 at 49, and its notice of motion for summary judgment, *see* Dkt. No. 75 at 1; *see also Picard v. Magliano*, 42 F.4th 89, 101 (2d Cir. 2022) ("An as-applied challenge ... 'requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right'") (quotation omitted). To the extent that New Hope seeks a broader injunction, the Court declines to grant one, as New Hope has not established that there are "'no set of circumstances ... under which [the challenged statute] would be valid, or that the statute lacks any plainly legitimate sweep.'" *Picard*, 42 F.4th at 101 (quoting *United States v. Stevens*, 559 U.S. 460, 472 (2010)).

Court further

  **ORDERS** that New Hope's motion for summary judgment (Dkt. No. 75) is **GRANTED**; and the Court further

  **ORDERS** that OCFS is **ENJOINED** from enforcing 18 N.Y.C.R.R. § 421.3(d) insofar as it would compel New Hope to process applications from, or place children for adoption with, same-sex couples or unmarried cohabitating couples, and insofar as it would prevent New Hope from referring such couples to other agencies; and the Court further

  **ORDERS** that this Court shall retain jurisdiction of this matter for the purpose of enforcing its Orders; and the Court further

  **ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 6, 2022
   Albany, New York

*[signature]*
Mae A. D'Agostino
U.S. District Judge